NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

LILLIAN C. THOMPSON, *Petitioner/Appellant*,

*v.*

BRIAN DAVID VAUGHN, *Respondent/Appellee*.

No. CV 15-0072 FC
FILED 12-8-2015

Appeal from the Superior Court in Maricopa County
No. FC2010-005937
The Honorable William L. Brotherton, Jr., Judge

**VACATED AND REMANDED WITH DIRECTIONS**

COUNSEL

Law Offices of David D. White, P.C., Phoenix
By David D. White, Sundown L. White
*Counsel for Petitioner/Appellant*

Law Office of Robert E. Siesco, Phoenix
By Robert E. Siesco
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1        Lillian C. Thompson ("Mother") appeals the family court's orders denying and dismissing her petition to modify legal decision-making and awarding attorneys' fees and costs to Brian David Vaughn ("Father"). For the reasons set forth below, we vacate the family court's orders and remand for the court to hold an evidentiary hearing on the petition pursuant to Arizona Revised Statutes ("A.R.S.") section 25-411(L) (Supp. 2015).

**FACTS AND PROCEDURAL HISTORY**

¶2        Mother and Father were married in 2001. The couple have two minor children in common, D.V. (born in 2004) and T.V. (born in 2006).

¶3        In September 2010, Mother filed a petition for dissolution of the parties' marriage. Both before and after finalization of the decree of dissolution, the parties had a strained relationship and regularly engaged in disagreements regarding parenting. In November 2011, the family court (Judge Christopher Whitten) appointed a parenting coordinator, Annette Burns, to assist in the case. *See* Ariz. R. Fam. Law P. 74.

¶4        On March 22, 2012, the family court entered a decree of dissolution of marriage via settlement. Under the decree, the parties were granted joint legal custody (decision-making) and equal parenting time with the children. Also, the parties were required to participate in mediation to resolve disputes involving the children before seeking relief from the court.

¶5        The family court continued to utilize the parenting coordinator's services after the decree, regularly approving and adopting her recommendations as temporary orders of the court, although sometimes with slight modification. The majority of the parenting coordinator's involvement consisted of attempting to resolve Father's inappropriate communications with Mother, as well as resolving

disagreements between Mother and Father regarding the need for counseling for D.V. and a medical (eye) decision affecting T.V.[1]

¶6 After an October 2, 2013 email from Father indicating he would purposely draft emails in such a way as to frustrate communications, the parenting coordinator reported, "The content of Father's emails to Mother make co-parenting communication virtually impossible."[2] On October 24, 2013, the family court adopted the parenting coordinator's recommendation that Father's communications be monitored by a forensically informed mental health professional for a duration of at least thirty days.

¶7 Also in October 2013, Mother moved to extend the parenting coordinator's appointment, which was set to expire in November. Father objected to the parenting coordinator's report and recommendations, and moved for appointment of a new parenting coordinator.

¶8 At the conclusion of a January 7, 2014 evidentiary hearing regarding Father's objection and the parties' motions, the family court reappointed Ms. Burns as parenting coordinator and affirmed her findings and recommendations, explaining in part:

> Father and Mother have historically communicated poorly. Evidence of this problem is plentiful in reviewing their email messages to one another. Father's emails to Mother, many of which are trial exhibits, are sarcastic, condescending and go far beyond any issues related to parenting of the children. They are unnecessarily lengthy and

---

[1] Based on the parenting coordinator's recommendations, Father was sanctioned by the court for "inappropriate" email communications, which included numerous, duplicative, and lengthy emails, and emails accusing Mother of lying and containing insults, sarcasm, and derogatory comments about Mother, and consistently referencing past events, including those that occurred during the divorce proceedings. Mother occasionally engaged in some of the same conduct as Father, but as the parenting coordinator noted, "not nearly to the same extent as Father."

[2] After being advised by the parenting coordinator that some of his emails were not understandable, Father responded, "Since I am meeting your requirement of less than 70 words I started using code which [Mother] will understand but you will not. You will understand less and less of some [e]mails as I will be doing it more in the future."

repetitive. They repeatedly attack in an unnecessarily harsh manner and cover subjects which the Parenting Coordinator told him should not be discussed in emails. The Court adopted more restrictive email rules, based upon the recommendations of the Parenting Coordinator, without objection by Father, on August 22, 2013. After these more restrictive rules were put in place, Father largely continued his bad behavior. Even when Father has a valid point to make, he communicates that point in such an inflammatory manner, that his point is forever drowned in the vitriolic manner in which it is sent.

Father admits only that he has not followed the email rules "to the letter." He continues to argue that he is doing only what is in the best interest of the children. He does not seem to perceive himself as having created stumbling blocks in the way he communicates.

The Parenting Coordinator has made efforts to address this problem on multiple occasions. Father seems to perceive these efforts as adversarial. He apparently perceives the relationship between the Parenting Coordinator and himself as so antagonistic that she should be removed. He is wrong on both counts. The Parenting Coordinator's reprimands have been largely one sided only because the violations of the email rules have been largely one sided. She has not been unfairly harsh to Father.

Although the Court is cognizant of the need to replace Parenting Coordinators to avoid the danger of them becoming stale, usually after two years, Father has frustrated the purpose and work of the Parenting Coordinator in this case so much that it would be unfair to now rotate Annette Burns, rewarding Father for his long standing bad conduct by replacing her for trying to call him on that conduct.

The Parenting Coordinator's recommendation that Father participate in counseling with a forensically informed mental health professional, one who is willing to review email drafts with Father prior to him sending them for a period of 90 days, to assist him with tools to develop more effective communication is adopted as an order of the Court. The Parenting Coordinator shall choose the professional from

4

those which might be covered by Father's health insurance plan. That professional shall review the potential that Father has an anger control problem and, if he is found to have one, shall make a recommendation for addressing the issue. That professional shall report to the Parenting Coordinator in writing on a monthly basis.

¶9 On January 29, 2014, Mother filed a request for mediation, arguing a modification of legal decision-making was necessary. On March 4, 2014, the parties participated in mediation through Conciliation Services regarding Mother's desire to have sole legal decision-making, but were unable to reach any agreement regarding a modification of the legal decision-making arrangement.

¶10 Meanwhile, the treatment of T.V.'s eye misalignment disorder (intermittent exotropia) became a focus of contention between the parties. Based on the recommendation of an ophthalmologist, Dr. Mark Salevitz, Mother believed surgery was immediately necessary. Father insisted upon a second opinion, however, and Dr. Brendan Cassidy recommended a more conservative approach, which Father favored. The parties consulted a third ophthalmologist, Dr. Thomas Tredici, who indicated the reports and opinions of both of the other doctors were acceptable, but ultimately appeared amenable to adopting the conservative approach. The parties were unable to reach a decision between themselves as to whether surgery should take place to treat the condition, or the parameters for making such a decision, and sought the assistance of the parenting coordinator, who recommended a conservative approach with further evaluation in her March 17, 2014 report and recommendations.

¶11 Mother filed a partial objection to the parenting coordinator's report and recommendations. Later, after Father's response and Mother's reply, Mother filed a supplement to her reply, in which she accused Father of recording the doctors without their knowledge and consent, and subsequently manipulating or attempting to manipulate their recommendations, especially those of Dr. Tredici and Dr. Salevitz, through ex parte communications.[3] Mother also requested final decision-making

---

[3] Dr. Salevitz withdrew from further professional care of the parties' children on April 30, 2014, after becoming aware Father was surreptitiously recording conversations with the physicians and had accused Dr. Salevitz of failing to follow the American Association for Pediatric Ophthalmology and Strabismus (AAPOS) guidelines. According to Mother, Dr. Salevitz

authority for T.V.'s eye condition only. Father responded in part that neither parent should be awarded final decision-making authority, but if the court determined the need to specify one parent, Father should be awarded final decision-making authority.

¶12 On May 27, 2014, the family court held an evidentiary hearing regarding whether surgery should take place, and the court adopted the recommendation of the parenting coordinator for conservative, non-surgical care in a signed minute entry order dated May 28 and filed June 4, 2014. The court also ordered the parties to continue to monitor T.V.'s vision and present future disputes to the parenting coordinator. Additionally, after noting the parties had "advocated with these doctors in a manner that, at least in part, is responsible for some of the doctors withdrawing from [T.V.]'s care," the court ordered that neither party (1) communicate with the children's medical providers in writing without sending copies of communications to the other parent, or (2) record the children's medical care providers without the knowledge and consent of all persons being recorded. The court also denied both parties' requests for attorneys' fees, but did not explicitly address in its minute entry the parties' arguments regarding sole legal decision-making for T.V.'s eye.

¶13 Later, on June 13, 2014, the parenting coordinator issued another report and recommendations, finding that Father continued to have difficulties with communications by sending numerous emails to Mother accusing her of misrepresentations until instructed by the parenting coordinator to stop.[4] On July 1, 2014, the family court approved the parenting coordinator's recommendations that the forensically informed mental health professional, Dr. Marlene Joy, continue monitoring Father's communications and provide an update report regarding his ongoing therapy, and that the parties be limited in their communications with and

explained in part, "I cannot be accused of these type of things," and "I can't take threats." Father asserted he had recorded the appointments to ensure Mother did not misrepresent statements made by the doctors and to hold the doctors "accountable," and that Dr. Salevitz withdrew because the parties were not following his recommended treatment plan. In a letter dated May 21, 2014, Dr. Cassidy also withdrew his services as T.V.'s ophthalmologist.

4       The parenting coordinator also noted Mother had on occasion sent emails of excessive length; however, when advised she had done so, Mother revised her emails to comply.

documentation provided to health care providers. After Father filed an objection, the court held oral argument in September 2014 and affirmed the recommendations, with minor amendments.

¶14        In the meantime, on July 17, 2014, Mother filed her petition for modification of legal decision-making, alleging in part that a substantial change of circumstances affecting the best interest of the children had occurred since the decree because "Father's inappropriate behavior and inability to communicate has made co-parenting utterly impossible," and that although the parenting coordinator had been "helpful," Father had continued his inappropriate communications "despite numerous sanctions, reports and recommendations to the Court." Mother further alleged the parties were in disagreement as to the selection of a new treating physician for T.V., and Father had indicated he would be unwilling to consent to surgery until T.V. was eighteen years of age.

¶15        On August 4, 2014, Father filed both a response to Mother's petition for modification of legal decision-making and a motion to dismiss the petition. Father sought to have the petition dismissed for failure to comply with Rule 91, Ariz. R. Fam. Law P., and A.R.S. § 25-411, maintaining no substantial change of circumstances had occurred, Mother had failed to set forth specific facts and allegations supporting adequate cause for a hearing, and Mother had not provided a factual basis for concluding modification would be in the best interest of the children. Father further maintained that "Mother's agenda is to obtain sole legal decision-making so that she can authorize the minor child, [T.V.]'s, ex[o]tropia eye surgery without Father's consent and over Father's objection."

¶16        Mother moved to strike Father's motion to dismiss, and filed a response, requesting the court deny his motion and arguing that detailed facts were set forth in the petition for modification establishing adequate cause for a hearing and why modification would be in the children's best interest. Father responded to the motion to strike, arguing his motion to dismiss was not frivolous because it was based on Mother's failure to state a claim.

¶17        On September 10, 2014, the family court heard oral argument regarding Father's objection to the parenting coordinator's June 13, 2014 report and recommendations and subsequent related pleadings. The court did not hear oral argument or receive any evidence regarding Mother's petition for modification of legal decision-making or the parties' subsequent motions related to that petition.

¶18        Later, however, in a signed minute entry order filed October 1, 2014, the family court denied Mother's petition for modification of legal decision-making, granted Father's motion to dismiss Mother's petition, and denied Mother's motion to strike Father's motion to dismiss.  The court found the petition failed to state "adequate cause" under A.R.S. § 25-411 to support holding a hearing on the petition.  The court also awarded Father his reasonable attorneys' fees and costs after finding the cause was so inadequate as to render the filing an unreasonable position under A.R.S. § 25-324:

> The Court notes that Judge Whitten[5] did agree with the medical approach for the minor child, [T.V.], which was supported by Respondent/Father and the Parenting Coordinator.  Subsequent to Judge Whitten's ruling, Petitioner/Mother filed a Petition for Modification of Legal Decision Making on July 17, 2014.  In said Petition, Petitioner/Mother's main request is to be given sole legal decision making for the minor children or, in the alternative, "at the very least" she receive "final say regarding major mental and medical related decisions."

> The Court finds the timing of the filing of this Petition suspect considering the fact that it occurred a few weeks after Judge Whitten ruled against Petitioner/Mother's preferred treatment option for her son.  Respondent/Father's pleadings are well-taken especially where they infer [sic] that a granting of Petitioner/Mother's Petition would result in an "end run" around Judge Whitten's May 28, 2014 Order.

> The Court finds that Petitioner/Mother's Petition for Modification of Legal Decision Making fails to state "adequate cause" under ARS § 25-411 to support holding a hearing on the Petition.  Therefore, consistent with the statute, Petitioner/Mother's Petition for Modification of Legal Decision Making is denied, Respondent/Father's Motion to Dismiss Petitioner/Mother's Petition for Modification of Legal Decision Making is granted, and Petitioner/Mother's Motion to Strike Respondent's Motion to Dismiss is denied.  Additionally, the Court finds the cause so inadequate for

---

5        The case was reassigned to Judge William L. Brotherton, Jr., on July 28, 2014.

Petitioner/Mother's Petition for Modification of Legal Decision Making, as to render its filing as an unreasonable position by Petitioner/Mother pursuant to ARS § 25-324. Therefore the Court awards reasonable attorney fees and costs to Respondent/Father. Respondent/Father is ordered to file a China Doll Affidavit[6] by October 8, 2014.

In a signed minute entry order filed December 10, 2014, the court awarded costs and attorneys' fees to Father in the amount of $3,408.

**¶19** We have jurisdiction over Mother's timely appeal from the court's minute entry orders filed October 1 and December 10, 2014. *See* A.R.S. § 12-2101(A)(2) (Supp. 2015).

## ANALYSIS

**¶20** As an initial matter, Father argues this court should not consider the merits of the family court's May 28, 2014 order addressing T.V.'s medical (eye) issue. Mother agrees, and so do we.

**¶21** Mother did not appeal the family court's May 28 order; accordingly, that order, absent intervening facts, is final and is not at issue in this appeal. *See generally Wendling v. Sw. Savings & Loan Ass'n*, 143 Ariz. 599, 601, 694 P.2d 1213, 1215 (App. 1984) (stating that this court lacks jurisdiction to review matters not contained in the notice of appeal (citations omitted)). Moreover, we agree with Father and the family court that, to the extent Mother's July 17 petition for modification of legal decision-making could be construed as challenging the family court's May 28 order, her petition would constitute an untimely and improper collateral attack on, or "end run" around, that order. *See generally Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). Further, although Mother is correct that the family court did not directly address her prior request for sole legal decision-making regarding T.V.'s eye in its May 28 order, the parties had placed the issue before the court, and the court implicitly ruled on that issue when it ordered that "the parties shall continue to monitor [T.V.]'s vision and shall present any dispute about his future care to the Parenting Coordinator." The only reasonable interpretation of the court's May 28 order is that Mother's limited request for modification of legal decision-making as to T.V.'s eye was denied.

---

[6] *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App. 1983).

**¶22** Mother argues, however, that she based her July 2014 petition for modification of legal decision-making on what she perceived to be long-standing and systemic issues in communicating with Father-issues that allegedly affected the parties' ability to parent the children and that began long before and continued even after the family court issued its May 28 order–and not simply on her lack of success in convincing the court to order surgery for T.V. or provide her with sole legal decision-making as to that issue. *See generally Pridgeon v. Superior Court*, 134 Ariz. 177, 180, 655 P.2d 1, 4 (1982) (recognizing that the significance of subsequent changes in circumstances "need not be determined in a vacuum" (citation omitted)). We agree with Mother that the May 28 order did not constitute a final appealable order on a global legal decision-making arrangement. That issue was not before the family court at the May 27 hearing, and the court's order did not address that issue. Further, Mother's July 17 petition for modification of legal decision-making alleged the parties had subsequently encountered disagreements regarding selection of a new treating physician for T.V., that Father had continued to act inappropriately and unreasonably in his communications since the May 28 order, and that Father's intransigent behavior continued to prevent a collaborative decision-making process – all issues that allegedly arose or had become exacerbated since the family court's May 28 minute entry order.[7]

**¶23** Mother argues the family court abused its discretion in finding her petition for modification of legal decision-making failed to state adequate cause under A.R.S. § 25-411(L) to support holding a hearing on the petition. We review the family court's order granting Father's motion to dismiss for an abuse of discretion. *Dressler v. Morrison*, 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978, 980 (2006).

**¶24** Pursuant to Rule 91(D), Ariz. R. Fam. Law P., "[n]o hearing for modification of a child custody order or decree shall be set unless there is compliance with A.R.S. § 25-411." Subsection (L) of A.R.S. § 25-411 requires a person seeking to modify any type of legal decision-making or parenting time order to submit an affidavit or verified petition setting forth detailed facts supporting the requested modification, and further provides that the family court "shall deny the motion unless it finds that adequate cause for hearing the motion is established by the pleadings, in which case

---

[7] Moreover, although Mother's July 17 petition appeared to seek broad relief that, if granted in full, might have tended to undercut the family court's previous May 28 order, nothing would have prevented the court from imposing appropriate limitations on any relief granted.

it shall set a date for hearing on why the requested modification should not be granted."

¶25        In general, the family court has wide discretion in assessing whether adequate cause for hearing the motion has been established by the pleadings. *Siegert v. Siegert*, 133 Ariz. 31, 33, 648 P.2d 146, 148 (App. 1982). We will reverse the court's decision, however, if "no reasonable judge would have denied the petition without a hearing." *Id.*

¶26        In this case, Mother's petition for modification of legal decision-making set forth detailed facts supporting the requested modification, *see* A.R.S. § 25-411(L), including facts supporting Mother's allegation that a substantial change of circumstances affecting the best interest of the children had occurred since the decree because Father's persistent, inappropriate behavior and inability or refusal to properly communicate had rendered collaborative decision-making "impossible," and that Father had continued his inappropriate communications despite the consistent and ongoing assistance of a parenting coordinator and a forensically informed mental health professional, and sanctions and modifications to email policies imposed by the court. *See* A.R.S. § 25-403.01(B)(2)-(3) (Supp. 2015).[8] The petition further stated the parties had reached a new disagreement regarding the selection of a new treating physician for T.V., Father had engaged in various instances of inappropriate conduct with medical providers, and Father had indicated he would be unwilling to consent to surgery—presumably even if medically

---

[8]        Subsection (B) of A.R.S. § 25-403.01 provides as follows:

B. In determining the level of decision-making that is in the child's best interests, the court shall consider the factors prescribed in § 25-403, subsection A and all of the following:

1. The agreement or lack of an agreement by the parents regarding joint legal decision-making.
*2. Whether a parent's lack of an agreement is unreasonable or is influenced by an issue not related to the child's best interests.*
*3. The past, present and future abilities of the parents to cooperate in decision-making about the child to the extent required by the order of joint legal decision-making.*
4. Whether the joint legal decision-making arrangement is logistically possible.

(Emphasis added.)

necessary—until T.V. was eighteen years of age, and that Mother lacked the financial resources to engage in continual litigation with Father while he continued to act unreasonably and inappropriately with regard to the children's best interest. In response, Father disputed Mother's allegations and the factual basis for them—including Mother's basis for asserting that modification would be in the best interest of the children—and maintained Mother's agenda was to obtain sole legal decision-making over treatment of T.V.'s eye disorder.

¶27 In denying and dismissing Mother's petition, while finding the timing of the petition "suspect," that it was designed as an "end run" around Judge Whitten's May 28 order, and that it was so lacking in adequate cause as to constitute an unreasonable position, the family court necessarily adopted the facts as stated by Father, and implicitly found Father more credible than Mother. By weighing the credibility of the parties' opposing statements without an evidentiary hearing, however, the family court engaged in an impermissible "trial by affidavit." *See Pridgeon*, 134 Ariz. at 181, 655 P.2d at 5. "In such a case, the court must hold a hearing." *Id.; accord Volk v. Brame*, 235 Ariz. 462, 464, ¶ 1, 333 P.3d 789, 791 (App. 2014) (holding that "when the resolution of an issue before the court requires an assessment of credibility, the court must afford the parties an opportunity to present sworn oral testimony"). We recognize that, having recently inherited this long-standing, contentious matter, Judge Brotherton was at a significant disadvantage in understanding the background and context of the new and recurring disputes, but, on this record, it was inappropriate for the court to summarily deny and dismiss Mother's petition for modification of legal decision-making—and further order that Mother pay Father's costs and attorneys' fees for taking an unreasonable position—without affording Mother the opportunity to present sworn oral testimony. In this situation, the family court must hold an evidentiary hearing before assessing and determining the credibility of the parties.

¶28 Father requests attorneys' fees on appeal pursuant to A.R.S. § 25-324 (Supp. 2015). Father provides no current information as to the parties' relative financial information, however, and to the extent the record reflects financial disparity as between the parties, it would appear that Father has more financial resources. Further, neither party's arguments on appeal were unreasonable. We therefore decline to award fees. *See Leathers v. Leathers*, 216 Ariz. 374, 379, ¶ 22, 166 P.3d 929, 934 (App. 2007) (recognizing this court must examine the parties' financial resources and the reasonableness of their positions before awarding fees under § 25-324); *Magee v. Magee*, 206 Ariz. 589, 593, ¶ 18, 81 P.3d 1048, 1052 (App. 2004) ("[R]elative financial disparity between the parties is the benchmark for

eligibility."). We grant Mother her taxable costs on appeal upon her compliance with Rule 21, ARCAP.

## CONCLUSION

**¶29** We vacate the family court's October 1 and December 10, 2014 minute entry orders, and remand for the court to hold a hearing on Mother's petition for modification of legal decision-making. We make no comment on the merits of the hearing on remand, but emphasize that, in making any legal decision-making determination, the family court must consider all factors relevant to the children's best interest, including the factors enumerated in A.R.S. § 25–403(A) (Supp. 2015). Further, "the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child[ren]." A.R.S. § 25–403(B).



Ruth A. Willingham · Clerk of the Court
FILED: ama