NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

SHIRLEY RAE LAMB, *Petitioner/Appellant*,

*v.*

NEIL H. NIELSEN, *Respondent/Appellee*.

No. 1 CA-CV 17-0171 FC
FILED 11-21-2017

Appeal from the Superior Court in Maricopa County
No. FC2015-093296
The Honorable James D. Smith, Judge

**AFFIRMED**

COUNSEL

Alongi Law Firm, PLLC, Phoenix
By Thomas P. Alongi
*Counsel for Petitioner/Appellant*

Neil H. Nielsen, Glendale
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

¶1          Shirley Rae Lamb ("Mother") appeals the family court's decree of dissolution and denial of her motion to amend the judgment, arguing the court erred in failing to find that Neil H. Nielsen ("Father") committed domestic violence against Mother in the marital home pursuant to Arizona Revised Statutes ("A.R.S.") section 25-403.03 (2017).[1]  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[2]

¶2          The parties married in 2002 and have two minor children ("the children") in common.  Mother suffers from chronic mental illness that requires ongoing treatment.  Specifically, Mother has Bipolar I Disorder, which causes her to have "hypermania," or extreme manic episodes.  During the parties' marriage, Mother was hospitalized approximately seven times for mental illness, often after she stopped taking her medication.

¶3          While in Oregon in 2005, Mother, who was in a manic phase at the time, alleged domestic violence against Father and obtained an order of protection.  The Oregon court ultimately quashed the protective order, however, and Mother was hospitalized.  After the Oregon Department of Human Services concluded Father did not pose a threat to the older child, but Mother did, the older child was placed with Father.

---

[1]     We cite the current version of the applicable statutes because no revisions material to our analysis have occurred since the court's rulings.

[2]     We view the facts and reasonable inferences in the light most favorable to affirming the family court.  *See Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987); *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984).

¶4 On the evening of May 1, 2015, Mother and Father engaged in an argument, which led to a brief physical altercation in the home.[3] Mother then "got her stuff," and she and Father went next door to the home of Father's mother, where Mother accused Father of choking her.[4]

¶5 The next morning, Mother called 911, alleging Father had physically assaulted her the evening before; however, when police arrived, Mother told them Father had not intentionally put his hands around her neck. Further, the reporting officer observed no injuries on Mother, and Mother stated she did not want Father to be prosecuted. Later that day, Mother went to Banner Estrella Medical Center, where she presented with some bruising to her upper arm and face, and reported being choked.[5]

---

[3] According to Father, Mother was angry when Father arrived home and "purposely was picking a fight with [him] for some reason." Father eventually responded with an invective, Mother threatened to call the police, and Father grabbed the phone from her. Mother then "went berserk," attacking Father like a "bobcat," and when Father attempted to restrain her, they both "went over the coffee table and landed on the ground between the coffee table and the wall." Mother became more "hysterical," screamed, scratched at Father, bit Father's hand, and began swinging her fists, trying to "smack" Father in the face, while Father continued to try to restrain her until she eventually calmed down.

[4] Father denied choking Mother and testified that he and his mother examined Mother's neck that evening and found no observable marks.

[5] Four days after the altercation, Mother underwent a medical forensic examination by the Glendale Police Department. The examiner documented various injuries to Mother, including scratches and bruises, and noted that Mother reported symptoms consistent with strangulation, and exhibited a raspy voice. Father also had a bite mark and was covered with numerous scratches and bruises, and he attributed Mother's raspy voice to Mother "screaming" at him throughout the May 1 incident.

**¶6** On May 4, 2015, Mother obtained an order of protection against Father.[6] Father was never criminally charged based on the May 1 incident.

**¶7** On May 8, 2015, Mother petitioned for dissolution of the parties' marriage. Three days later, Mother filed a "Motion for Emergency Orders Without Notice," seeking temporary sole care and legal decision-making authority over the children and that Father either (1) be denied any parenting time with the children or (2) be allowed supervised parenting time at his expense and that he complete a court-ordered anger management program of at least twelve weeks in duration. In support of her motion, Mother alleged that, on May 1, Father had attacked and choked her, and she also alleged other instances of domestic violence by Father.

**¶8** In response, Father denied Mother's allegations and countered with a request for emergency orders of his own, alleging that Mother had

> struggled with Bipolar 1 Disorder for most of her adult life. When she is medicating and compliant with treatment she seems to function well, when she is not medicated and not compliant with treatment, she has psychotic episodes which cause[] breaks in her perception of reality. During such psychotic episodes she has obtained a number of orders of protection over the years, both in the state of Oregon where [Mother and Father] previously resided as well as one in the state of Arizona. All of them have either been quashed by the court or voluntarily by her as soon as she becomes compliant with treatment including hospitalization and taking her medication.

Father stated that Mother had recently been "off her medication and [was] again experiencing a manic episode consistent with Bipolar Disorder." He also noted the maternal grandmother (Mother's mother) had recently expressed concern "that [Mother] is definitely manic" and had stated that "[Mother] knows that she would not get custody of the [children] because of the bi-polar history, so she has to manufacture spousal abuse in hopes of accomplishing her goal. It's so heartbreaking that she put [the older child]

---

[6] At the May 12 hearing on the order of protection, the parties entered an agreement to leave the order in place, but to significantly reduce the order's scope.

through this once again let alone the [younger child]." Father sought sole care and legal decision-making authority and argued that Mother's parenting time should be supervised. Father also sought an order requiring Mother to undergo a psychological evaluation.

¶9 On May 19, 2015, the parties agreed to temporarily share joint legal decision making for the children. Mother also agreed to submit to a psychological evaluation.

¶10 A few days later, Father's sister petitioned to have Mother involuntarily committed to a secure facility for inpatient psychiatric treatment.[7] The petition alleged Mother was experiencing a psychotic episode and was a danger to herself and others. Doctors concluded that Mother was seriously mentally ill, and a detention order for psychiatric treatment was issued on May 29. Ultimately, sheriff's deputies had to take Mother into custody with their weapons drawn.[8]

¶11 Because Mother had been involuntarily committed to a mental health facility, Father filed an emergency motion for sole decision-making authority and to suspend parenting time for Mother on June 2, 2015. The court granted Father's motion, and subsequently ordered that Mother have supervised parenting time. On August 12, 2015, the parties stipulated that Father continue to have sole legal decision-making authority over the children and Mother continue to have supervised parenting time.

¶12 On August 9 and November 23, 2016, the family court conducted a two-part evidentiary hearing on issues presented in the dissolution. In August, the court addressed legal decision making and parenting time, and in November, the court addressed property and debt issues related to the dissolution proceedings.

¶13 After taking the matter under advisement, the family court entered a decree of dissolution on November 30, 2016. The court awarded sole legal decision making to Father, but also awarded Mother parenting

---

[7] The record indicates that Father's sister filed the petition after the maternal grandmother requested that she intervene.

[8] Mother remained in the mental health facility until January 2016. At trial, however, Mother presented no medical records or testimony from any medical professional to demonstrate she is complying with her required psychiatric regimen.

time. As relevant to this appeal, the court found Mother had not established that Father committed domestic violence against her:

> THE COURT FINDS that . . . Mother has *not* established that Father has engaged in an act of domestic violence against Mother. The evidence created at or near the time of the [May 1, 2015] incident supports Father's version of events. Mother was inconsistent in her statements to law enforcement compared to later statements to medical professionals at Banner Hospital. Moreover, we know that Mother was involuntarily committed for inpatient treatment approximately three weeks later, further supporting the notion that Mother was experiencing a manic episode tied to failing to take the medication required for her bipolar condition.

¶14 Mother moved to amend the judgment pursuant to Rule 83, Ariz. R. Fam. Law P., requesting the family court reverse its finding that she failed to prove Father committed domestic violence against her. The court denied the motion.

¶15 Mother timely appealed. We have jurisdiction pursuant to A.R.S § 12-2101(A)(1), (2) (2016).

**ANALYSIS**

*I.      Standard of Review*

¶16 We will affirm if reasonable evidence supports the family court's decision, *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9 (App. 2007), and will not substitute our opinion for that of the family court unless there has been a clear abuse of discretion, *Deatherage v. Deatherage*, 140 Ariz. 317, 319, (App. 1984). A court abuses its discretion when it commits an error of law in reaching a discretionary decision, reaches a conclusion without considering the evidence, commits another substantial error of law, or makes a finding lacking substantial evidentiary support. *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007).

¶17 We will not set aside findings of fact unless they are clearly erroneous. Ariz. R. Fam. Law P. 82(A). "A finding of fact cannot be 'clearly erroneous' if there is substantial evidence to support it, even though there might be substantial conflicting evidence." *Moore v. Title Ins. Co. of Minn.*, 148 Ariz. 408, 413 (App. 1985) (citation omitted).

**¶18** We also defer to the family court's credibility determinations when evidence conflicts. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998); Ariz. R. Fam. Law P. 82(A). We will not reweigh conflicting evidence, and although conflicting evidence may exist, we will affirm if substantial evidence supports the court's decision. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶19** "If the court determines that a parent who is seeking sole or joint legal decision-making has committed an act of domestic violence against the other parent, there is a rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act of domestic violence is contrary to the child's best interests."[9] A.R.S. § 25-403.03(D); *see also* A.R.S. § 25-403.03(B) ("The court shall consider evidence of domestic violence as being contrary to the best interests of the child.").[10] Under § 25-403.03(D), a person commits an act of domestic violence if that person (1) intentionally, knowingly, or recklessly causes or attempts to cause sexual assault or serious physical injury, (2) places a person in reasonable apprehension of imminent serious physical injury to any person, or (3) engages in a pattern of behavior for which a court may issue an ex parte order to protect the other parent who is seeking child custody or to protect the child and the child's siblings.

*II. The Merits*

**¶20** Mother argues the weight of the evidence compelled a finding that Father committed an act of domestic violence against her in the marital home, and the family court abused its discretion in failing to make such a finding.[11] We disagree.

---

[9] "This presumption does not apply if both parents have committed an act of domestic violence." A.R.S. § 25-403.03(D).

[10] Further, "[n]otwithstanding subsection D of this section, joint legal decision-making shall not be awarded if the court makes a finding of the existence of significant domestic violence . . . or if the court finds by a preponderance of the evidence that there has been a significant history of domestic violence." A.R.S. § 25-403.03(A).

[11] Although Mother does not directly say so, her argument challenges the court's finding that "it is in the children's best interest to award sole legal decision-making authority to Father" and its order awarding Father such authority regarding the children.

¶21 Before finding that Mother had not proven Father committed an act of domestic violence, the family court carefully considered any evidence of each of the factors enumerated in A.R.S. § 25-403.03(C), including (1) findings from another court of competent jurisdiction, (2) police reports, (3) medical reports, (4) records of the Department of Child Safety, (5) domestic violence shelter records, (6) school records, and (7) witness testimony.

¶22 Substantial evidence supports the family court's finding. As the court recognized, Mother has a history of manic episodes, which have previously led her to make unsubstantiated claims of domestic violence against Father. The Oregon court concluded that Mother, rather than Father, was a danger to the children, and none of Mother's several allegations against Father have resulted in charges being filed against him. As for the May 1, 2015 incident, Father was not arrested or charged with any crime. Mother, however, was involuntarily committed shortly after the incident, and she remained hospitalized for mental illness for more than seven months.[12] Father denied assaulting Mother and contended Mother was the aggressor, ostensibly because Mother was experiencing a manic episode connected to her mental illness. Father also suffered numerous injuries, consistent with his testimony that Mother had attacked him, and Father's testimony was supported by substantial evidence in the record, including photographs of his injuries and statements from the investigating police officer and the parties' older child, both of whom stated they did not observe any marks on Mother's neck following the incident. Further, Father's testimony at trial remained consistent with his previous statements to investigators, whereas Mother initially denied to the investigating officer that Father choked her, and several of her statements at trial were inconsistent with the evidence and her previous statements. On this record, we cannot say the family court abused its discretion in finding that Mother failed to establish that Father engaged in an act of domestic violence against her.

---

[12] Although Mother insisted at trial that she agreed to the mental health treatment, the record indicates otherwise, including the examining psychiatrist's report that Mother "has limited insight into her illness and is unwilling to agree to treatment on a voluntary basis." A second medical professional agreed that Mother required "involuntary inpatient treatment until she is sufficiently stabilized to transition to outpatient treatment."

### III. *Attorneys' Fees and Costs on Appeal*

**¶23** Mother requests an award of attorneys' fees on appeal pursuant to A.R.S. §§ 25-324 (2017), 25-403(A)(7) (2017), and 25-415(A)(1) (2017). As for A.R.S. § 25-324, Mother has provided no information as to the parties' financial resources, and Father's position has not been unreasonable. Further, § 25-403(A)(7) does not provide for attorneys' fees, and § 25-415(A)(1) is inapplicable here. Accordingly, we deny Mother's request for attorneys' fees on appeal. As the successful party on appeal, Father is entitled to an award of his taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶24** The family court's decree and order denying Mother's motion to amend the judgment are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

9