118 P.3d 621

In re the Marriage of: David G. KOH-LER, Jr., Petitioner/Appellant,

v.

Gwendolyn L. KOHLER, Respondent/Appellee.

No. 1 CA–CV 04–0377.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 18, 2005.

Clayton W. Plotkin, P.C. By Clayton W. Plotkin, Phoenix, Attorney for Petitioner–Appellant.

The Rubin Law Firm PLC By Michael S. Samuels, Phoenix, Attorney for Respondent–Appellee.

## OPINION

GEMMILL, Judge.

¶1 The marriage of David G. Kohler ("David") and Gwendolyn L. Kohler ("Gwen-

dolyn") was dissolved by decree entered April 20, 2004. David appeals two provisions of that decree involving the division of marital property. We hold that the trial court appropriately exercised its discretion in declining to deduct any costs of a future sale of the marital residence from Gwendolyn's interest in the residence because the evidence was insufficient to establish that a sale of the property was imminent or the estimated costs of such a sale. We also decide that the equitable exemption from division as community property of a portion of a spouse's pension benefits, recognized by our supreme court in *Kelly v. Kelly,* 198 Ariz. 307, 9 P.3d 1046 (2000), may be applicable to David's pension benefits. Accordingly, we affirm the trial court's refusal to deduct any costs of sale of the marital residence, but we vacate the court's decision regarding the division of David's pension and remand for further proceedings.

## I.

¶ 2 In reviewing the apportionment of community property, we consider the evidence in a light most favorable to upholding the trial court's ruling and will sustain that ruling if the evidence reasonably supports it. *Gutierrez v. Gutierrez,* 193 Ariz. 343, 346, ¶ 5, 972 P.2d 676, 679 (App.1998). We will not disturb the trial court's equitable apportionment of community property absent an abuse of discretion. *Id.* An abuse of discretion may occur when a trial court commits an error of law in the process of exercising its discretion. *Fuentes v. Fuentes,* 209 Ariz. 51, 56, ¶ 23, 97 P.3d 876, 881 (App.2004).

## II.

¶ 3 The trial court awarded the marital residence to David and granted Gwendolyn an equitable lien for her share of the community's equity in the property. The trial court also ordered that David and Gwendolyn would share the costs of refinancing the loan on the residence if David elected to refinance in order to pay Gwendolyn her equitable share. The trial court declined to order that a portion of the future costs of a sale of the residence also be deducted from Gwendolyn's share, and David contends this was error.

¶ 4 David testified he had no current plans to sell the property. On appeal, however, he argues that the trial court's failure to charge Gwendolyn's share with one half of the anticipated costs of a future sale was inequitable because his election to keep the home effectively saved Gwendolyn several thousand dollars that he will be forced to pay when, if ever, he sells the home. He maintains that the failure to charge Gwendolyn's interest with these costs constitutes an inequitable reduction of his share of the equity. Gwendolyn counters that the trial court properly declined to apply a cost-of-sale deduction because the court did not order the residence sold and David had no plans to sell it.

¶ 5 This specific issue has been addressed in other jurisdictions. For example, the Washington Court of Appeals considered the propriety of the deduction of the anticipated costs of sale from a spouse's share of an asset in *In re Marriage of Berg,* 47 Wash. App. 754, 737 P.2d 680 (1987). The court determined that in order to justify deduction of costs of the sale, there must be evidence in the record (1) showing that the party receiving the asset intends an imminent sale and (2) supporting the estimated costs of sale. *Id.* at 683. *Accord Virgin v. Virgin,* 990 P.2d 1040, 1049 (Alaska 1999); *In re Marriage of Kopplin,* 74 Or.App. 368, 703 P.2d 251, 253 (1985); *In re Marriage of Stenshoel,* 72 Wash.App. 800, 866 P.2d 635, 641–42 (1993). *See also Taber v. Taber,* 626 So.2d 1089, 1089–90 (Fla.Dist.Ct.App.1993) (deducting estimated costs of sale inappropriate in absence of evidence that sale imminent); *In re Marriage of Benkendorf,* 252 Ill.App.3d 429, 191 Ill.Dec. 863, 624 N.E.2d 1241, 1245–46 (1993) (same); *Carlson v. Carlson,* 127 N.C.App. 87, 487 S.E.2d 784, 786–87 (1997) (same). We find these authorities persuasive.

¶ 6 In the absence of evidence that a sale is likely to occur in the near future, it is speculative to allow a deduction of the costs of a hypothetical sale from the share of the equity awarded to the spouse not receiving the property. As explained in *Carlson:*

[T]he expenses of a future sale of an asset are uncertain in both occurrence and amount. For example, the property owner may die and thus never sell the asset. In any event, even if the sale does take place in the future, unless the sale is imminent, there is no reasonable basis upon which to predict the amount of expenses related to the sale.

*Id.* at 786–87 (citations omitted). Even if the evidence demonstrates that a sale of the property is imminent, there must be competent evidence upon which a finding can be made of the anticipated costs of sale. *See Virgin*, 990 P.2d at 1049 (affirming denial of deduction for costs of sale of home because husband did not introduce any evidence of the anticipated costs of sale); *Berg*, 737 P.2d at 683. Also, it will generally be inequitable to reduce one party's share of the community property by anticipated costs that are not expected to be incurred in the near future. *See Carlson* at 786; *see also* Brett R. Turner, *Equitable Distribution of Property* § 7.03, at 506 (2d. ed. 1994) ("[W]here owning spouse has no plan to sell the asset in the immediate future, costs of sale are ordinarily not a proper deduction.").

¶ 7 A trial court's resolution of this issue involves a fact-intensive inquiry into the intent and circumstances of the party receiving the asset. *See Berg*, 737 P.2d at 683. If the trial court has not ordered that the property be sold and the evidence does not demonstrate that a sale is imminent, the anticipated costs of sale generally should not be deducted from the parties' shares of community equity. *Id.; Virgin*, 990 P.2d at 1049. There may be instances, however, in which the trial court may appropriately exercise its discretion to deduct the anticipated costs of sale if supported by the evidence and if the court has considered the deduction as part of an overall division of the community property that is equitable.

■ ¶ 8 The evidence presented here did not justify a deduction for the costs of a sale. David testified that he did not have the immediate intent to sell the home. He explained that his desire was to buy Gwendolyn's community interest in the home. Further, the trial court made no finding as to the projected costs of a sale, and David does not suggest on appeal that he presented evidence on this point.[1] Accordingly, the trial court did not abuse its discretion by declining to reduce Gwendolyn's interest in the property by one half of the costs of a hypothetical sale.

### III.

■ ¶ 9 David participated in the Arizona Public Safety Personnel Retirement System during the marriage. The trial court found his entire retirement account to be a community asset and ordered that it be divided equally. Relying upon *Kelly*, David argues that the entire account was not divisible as a community asset because his contributions to that account were, at least in part, made in lieu of Social Security contributions and should therefore be· deemed his sole and separate property.

¶ 10 Generally, community property includes all assets acquired during marriage except by gift, devise, or descent. *See* Ariz. Rev.Stat. § 25–211(1) (2000). Our supreme court has held that the portion of a pension or retirement benefit earned during marriage may be divided as community property even though it will not be received until after dissolution of the relationship. *See Van Loan v. Van Loan*, 116 Ariz. 272, 273–74, 569 P.2d 214, 215–16 (1977). "Social Security bears many characteristics of a pension and would ordinarily be considered community property under· state law principles." *Kelly*, 198 Ariz. at 308, ¶ 5, 9 P.3d at 1047. Federal law, however, prohibits state courts from dividing Social Security as community property. 42 U.S.C. § 407 (2000); *see Kelly*, 198 Ariz. at 308, ¶ 5, 9 P.3d at 1047.

¶ 11 In *Kelly*, our supreme court considered whether a portion of a husband's retirement plan should be exempt from division as community property because his contribu-

---

1. David did not provide a transcript on appeal. *See* ARCAP 11(b)(1). In the absence of a transcript, an appellate court will presume that the record supports the trial court's rulings. *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App.1995); *Johnson v. Elson* 192 Ariz. 486, 489, 967 P.2d 1022, 1025 (App.1998).

tions to the plan were in lieu of Social Security contributions. The husband participated in a federal retirement program and did not make Social Security contributions. *Id.* at ¶ 1. The wife in *Kelly* participated in a different federal retirement program and part of her salary was paid into the Social Security system. *Id.* In accordance with 42 U.S.C. § 407(a), the wife's accrued Social Security benefits were her sole and separate property and not subject to division in the dissolution proceeding even though they were paid from community property earned during the marriage. *Id.* at ¶ 2. The husband asked the trial court to consider a portion of his benefits as separate property to compensate for this inequity. *Id.* at ¶ 3. The trial court refused his request, but our supreme court held that this was error. *Id.* at ¶ 5.

¶ 12 The supreme court reasoned that the equitable distribution of community property is a matter of fairness dependent on the facts of each case. *Id.* at 309, ¶ 8, 9 P.3d at 1048. Applying that concept of fairness, the court agreed with the husband that spouses who do not participate in Social Security must be treated the same as spouses who do participate and who therefore enjoy an exemption of that asset from distribution upon dissolution. *Id.* at ¶ 9. The wife had paid a portion of her salary—which was community property—into the Social Security system and the accrued benefits, if not for federal law, would have been divisible as community property in Arizona.

> Viewed another way, it can be seen that in the absence of social security contributions, the community could have spent, saved, or invested those funds as it saw fit. In each instance the resulting asset, if any, would have been divisible as community property. But, as matters presently stand,

community funds have been diverted to the separate benefit of one spouse. We believe this situation compels an equitable response....

> [A] present value ... should be placed on the social security benefits *[husband] would have received had he participated in that system during the marriage.* This necessarily will require a reconstruction of his wages. The social security calculation can then be deducted from the present value of [husband's] pension.... The remainder, if any, is what may be divided as community property.

*Id.* at ¶¶ 10–11 (citation omitted). *See also Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369, 372 (1990) (describing the same calculation).

¶ 13 David asked the trial court to apply *Kelly,* but the court determined that *Kelly* was not applicable primarily because "only one of the parties participated in a retirement plan" whereas in *Kelly* both spouses had retirement plans distinct from social security.[2] We disagree and conclude that the *Kelly* exemption may be applicable if Gwendolyn accrued Social Security benefits from her contributions to Social Security during the marriage.

¶ 14 Gwendolyn may not have participated in a private retirement plan while married to David, but she was employed during the marriage and Social Security contributions were withheld from her paychecks. Although these Social Security contributions consisted of community funds, any Social Security benefits resulting from those contributions will be payable to her alone under federal law. *See Kelly,* 198 Ariz. at 309, ¶ 10, 9 P.3d at 1048. David, on the other hand,

---

2. The trial court's order stated:

    The Court has reviewed *Kelly v. Kelly,* 198 Ariz. 307 [9 P.3d 1046] (2000) and finds that the present matter is distinct and different from the facts presented in *Kelly,* and therefore Kelly is not applicable. In this case, only one of the parties participated in a retirement plan. In *Kelly* both parties were federal employees with retirement pensions of which one had a component that included Social Security. No part of Father's pension benefits will be considered separate property for the purpose of division of the retirement. Even if Mother has

    received Social Security benefits, they are not subject to division nor is it appropriate to attempt to calculate what Father would have received if he had participated in the Social Security system and deduct that amount from the Retirement benefits. *Hisquierdo v. Hisquierdo,* 439 U.S. 572 [99 S.Ct. 802, 59 L.Ed.2d 1] (1979) as quoted in *Kelly v. Kelly.* Mother shall be entitled to her share of the Arizona Public Safety Personnel Retirement System as calculated by the number of months of marriage divided by the number of months the pension accrued times 50 percent.

made no Social Security contributions during the time he participated in the Arizona Public Safety Personnel Retirement System and therefore accrued no Social Security benefits. If Gwendolyn accrued Social Security benefits as a result of her contributions to the system during the marriage, then David may be entitled to have a portion of his contributions to his retirement plan treated as Social Security contributions and the present value of the hypothetical Social Security benefit designated as his sole and separate property. *See id.* at ¶ 11.

¶ 15 We do not believe our supreme court's analysis and holding in *Kelly* hinged on the fact that both parties participated in retirement plans separate from Social Security. Rather, the court addressed the inequity created when both spouses were employed during the marriage but only one spouse earned a Social Security benefit, and the court fashioned a remedy intended "to place the parties in the position they would have been had both participated in social security." *Id.* at ¶ 12; *see also Schneeman v. Schneeman,* 420 Pa.Super. 65, 615 A.2d 1369, 1375 (1992) ("By providing the employee-spouse with sole ownership of that part of the pension which would have otherwise been contributed to Social Security benefits, we have equated, as nearly as possible, employee-spouses who contribute to Social Security benefits and those who contribute to only a separate pension fund which is not statutorily exempt from marital property."). We conclude, therefore, that the trial court erred in its legal ruling that the equitable exemption endorsed in *Kelly* could not be applied in David's favor.

¶ 16 The supreme court in *Kelly* recognized that this exemption for pension contributions made in lieu of Social Security should be applied only if necessary to achieve equity. *See Kelly,* 198 Ariz. at 309–10 n. 2, ¶ 13, 9 P.3d at 1048–49 n. 2. For example, the court in *Kelly* cited with approval *McClain v. McClain,* 693 A.2d 1355 (Pa.Super.Ct.1997), in which the court declined to apply the exemption in favor of a husband because the

wife had no pension, she had worked only one year during the marriage, and any accrued Social Security benefit was "certainly minuscule." *McClain,* 693 A.2d at 1359; *Kelly,* 198 Ariz. at 309–10 n. 2, ¶ 13, 9 P.3d at 1048–49 n. 2. Accordingly, on remand the trial court must consider whether applying the *Kelly* exemption in favor of David is fair and equitable.

¶ 17 As part of this analysis, the trial court should make a threshold determination whether Gwendolyn accrued Social Security benefits during the marriage. Although "[n]o attempt to value [wife]'s expected social security benefits is called for here," *see Kelly,* 198 Ariz. at 309, ¶ 11, 9 P.3d at 1048, the court should consider whether Gwendolyn accrued benefits that were more than merely "minuscule" before applying the *Kelly* exemption in favor of David. *See McClain,* 693 A.2d at 1359; *Kelly,* 198 Ariz. at 309–10 n. 2, ¶ 13, 9 P.3d at 1048–49 n. 2.[3]

¶ 18 We vacate that portion of the decree dividing David's pension and remand this matter for further consideration in accordance with *Kelly* and this opinion.

## IV.

¶ 19 Because *Kelly* imposes a rule of equity and fairness, the trial court is not precluded from re-evaluating the overall equities, if a portion of David's pension is excluded from the community property, to determine whether the distribution of property or award of spousal maintenance should be adjusted. *See Birt v. Birt,* 208 Ariz. 546, 555, ¶ 31, 96 P.3d 544, 553 (App.2004) (holding that because property division established in a decree was vacated, trial court could reconsider issue of spousal maintenance).

¶ 20 The trial court's refusal to deduct any costs of sale of the marital residence is affirmed. The portion of the decree dividing David's Arizona Public Safety Personnel Retirement System pension is vacated. This matter is remanded to the trial court to consider application of the *Kelly* exemption

---

**3.** We also note that our supreme court acknowledged but rejected the argument that allowing this exemption would create an imbalance whenever there was a disparity between the salaries of each spouse. "[S]uch an inequity is not of our making, nor can it be worse than the situation that presently exists under the law." *Kelly* at ¶ 12.

to a portion of David's pension and, if deemed necessary in the exercise of the court's equitable discretion, for re-evaluation of the distribution of property and award of spousal maintenance under Arizona law.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge and G. MURRAY SNOW, Judge.

