166 P.3d 929

**In re the Marriage of Lanny D. LEATHERS, Petitioner/Appellant,**

v.

**Carol A. LEATHERS, Respondent/Appellee.**

**No. 1 CA–CV 05–0573.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 13, 2007.

Fromm Smith & Gadow, P.C. by Stephen R. Smith and Gary L. Lane, Phoenix, Attorneys for Petitioner–Appellant.

Bishop Law Office By Barbara Fuqua, Phoenix, Attorney for Respondent–Appellee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Lanny D. Leathers (husband) appeals from the trial court's divorce decree. For the reasons stated below, we reverse and remand on the issues of spousal maintenance, life insurance and the award of attorneys' fees below. We affirm as to the distribution of community assets and debts.

## BACKGROUND

¶2 Husband and wife were married in May 1962 and divorced in July 2005, after forty-three years of marriage. It is undisputed that, throughout the marriage, husband was the bread-winner and wife was primarily a homemaker and stay-at-home mother. Both parties are now in their early sixties.

¶3 Wife had a major stroke five years prior to trial; husband testified that he needed to start "slowing down," that traveling for work was getting more difficult, and that he had recently spent a day in the emergency room with an accelerated heart rate and breathing issues.

¶4 Prior to trial, husband and wife reached a settlement involving their home, their personal property, and three pieces of real property valued collectively at approximately $125,000–135,000. The parties agreed to sell the home and the real property and divide the proceeds equally. The trial court considered issues regarding spousal maintenance, a life insurance policy on husband's life, attorneys' fees, and the distribution of assets and debts including a 1999 Ford Expedition, $24,000 taken by wife from a joint account after the divorce was filed, and $34,000 taken against a home line of credit by husband.

## ISSUES ON APPEAL

¶5 Husband asserts on appeal that:

1. The trial court abused its discretion in determining the amount and duration of wife's spousal maintenance;

2. The trial court erred in ordering husband to divide his future Social Security benefits;

3. The trial court abused its discretion in ordering husband to be solely responsible for the line of credit obligation and in failing to require wife to account for or divide $24,000 that she removed from the community property money market account;

4. The trial court exceeded its authority in ordering husband to maintain a life insurance policy for the benefit of wife; and

5. The trial court abused its discretion in ordering husband to pay wife's attorneys' fees and costs.

## DISCUSSION

### A. Spousal Maintenance

¶6 Husband asserts that the trial court abused its discretion in determining the length and duration of spousal maintenance that was due wife. Husband asserted that wife should receive $1500 per month for four years; wife sought $5,364.45 per month for twenty-one years based on the Maricopa County Spousal Maintenance Guidelines (Guidelines).

¶7 Wife was awarded a fixed sum of spousal maintenance on a sliding scale for a period of nine years. Husband was then ordered to continue to pay, as spousal maintenance, the value of half of what he receives from Social Security indefinitely.

¶8 Specifically, husband was ordered to pay wife $4500 per month for the first five years. Husband was then to pay wife $3000 per month for the next two years. Husband was to pay wife $2000 per month the next year. In the following year, husband was to pay wife $1000 per month. The trial court heard testimony that husband would receive $1768 dollars per month in old age Social Security benefits once he reached the age of sixty-six and that he would be eligible for $2334 per month at age seventy. Based on husband's work history, wife would be eligible for Social Security benefits of half of husband's benefit amount once she reaches retirement age. *See* 42 U.S.C. § 402(b)(1) (2004).

■ ¶9 We review an award of spousal maintenance under an abuse of discretion standard. *See In re Marriage of Berger,* 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App.1983) (citation omitted). Therefore, we will view the evidence in the trial court in the light most favorable to sustaining wife's spousal maintenance award and will affirm if there is any reasonable evidence to support it. *See Thomas v. Thomas,* 142 Ariz. 386, 390, 690 P.2d 105, 109 (App.1984) (citation omitted).

¶ 10 The amount and duration of spousal maintenance is determined pursuant to Arizona Revised Statutes (A.R.S.) § 25–319(B) (2005). The trial court must consider thirteen factors, as each may be relevant in the particular case, including the standard of living during the marriage, the duration of the marriage, each spouse's age, employment history and earning ability, and the financial abilities and resources of each spouse. *Id.*[1] It appears from the minute entry that the trial court did consider the factors in A.R.S. § 25–319(B) when reaching its determination.

¶ 11 The record shows that, since 1979, husband has been a traveling, self-employed independent contractor. Husband testified that his annual income and expenses vary depending on the type of contract (hourly rate inclusive of expenses or expenses to be reimbursed by the employer), the length of each contract, and the number of contracts he takes on. For example, in 2004, husband billed more than $124,000 to clients. Husband testified that, after his business expenses and taxes, his net income was $63,000. He further testified that 2004 was a "good year" because he was able to bill nine months of the year. In 2003, husband was only able to bill seven months with an adjusted pre-tax gross income of $53,452. Husband submitted two financial affidavits. The first, in October 2004, showed a gross monthly income of $8515. The second, in April 2005, showed a gross monthly income of $7117. Wife testified that she thought that $8515 was an accurate average monthly income after taking into account lags between contracts. After a bench trial, the trial court determined that husband made an average wage of $72.50 per hour for a total of $150,800 per year.

¶ 12 Under the facts of this case, including wife's long tenure as a homemaker,

her ongoing health concerns, and the presence of other statutory factors under A.R.S. § 25–319(B), the trial court did not abuse its discretion in ordering spousal maintenance to last indefinitely. *See Hughes v. Hughes,* 177 Ariz. 522, 525, 869 P.2d 198, 201 (App.1993). The trial court also did not err in determining that any income wife could be expected to earn would be negligible.

¶ 13 The trial court did, however, abuse its discretion in determining the amount of support due wife. The earnings attributed to husband by the trial court are not supported by the record. Wife testified that husband's income was approximately $8515 per month, or $102,180 annually. Despite that, the trial court attributed an annual income to husband of more than $150,000. Husband does not have the type of job that allows for simply multiplying an hourly wage over forty hours a week for fifty-two weeks each year. The trial court must take the expected lags between jobs and the variability of husband's income into consideration. Here, both husband and wife testified that, due to the type of work husband does, his income is variable, and he cannot line jobs up one after the other. The trial court's spousal maintenance award is reversed for further proceedings consistent with this decision.

### B. Social Security

¶ 14 The trial court ordered husband to pay wife, as indefinite spousal maintenance, one-half of the value of any Social Security old age benefits that he received. Husband argues that such an order is either an illegal attachment of his federal old age pension or an illegal award of Social Security as community property. *See* 42 U.S.C. 407(a) (1998) (federal law prohibits the transfer or assignment of rights to Social Security benefits); *Kohler v. Kohler,* 211 Ariz. 106,

---

1. Wife urges that the maintenance award is sustainable under the Spousal Maintenance Guidelines. Because the trial court did not solely rely on the Guidelines, if it did at all, and because the Guidelines do not track the requisite multi-factor statutory analysis ("[t]he guideline amount is based upon **two** factors") of A.R.S. § 25–319(B), we do not consider them. *See* Maricopa Country Spousal Maintenance Guidelines, Section IV(A) (2002) (emphasis added). *Cf., Cullum v. Cullum,*

215 Ariz. 352, 160 P.3d 231 (App.2007) (maintenance award sustainable under the statute not invalidated by trial court's use of Guidelines). The Guidelines could not sustain this award, both because the award is based on a calculation of husband's income that is not supported by the evidence, and because the use of the Guidelines as a primary determinant of a maintenance award is an inappropriate analytical shortcut.

108, ¶ 10, 118 P.3d 621, 623 (App.2005) (citations omitted) (state law prohibits the division of Social Security as community property); *Kelly v. Kelly,* 198 Ariz. 307, 308, ¶ 5, 9 P.3d 1046, 1047 (2000) (citation omitted). We do not find such error here.

¶ 15 This trial court clearly intended wife to receive the monies as indefinite spousal maintenance. Because the exact amount of husband's eventual income from his old age Social Security was unknown at trial, the trial court ordered half of the amount husband received to be the amount of maintenance. The trial court specifically awarded the "value of one half" rather than attaching his Social Security itself in the order under the heading "Spousal Maintenance."

¶ 16 The award does not violate either 42 U.S.C. § 407 or the *Kohler* and *Kelly* line of cases. Therefore, we find no error in that portion of the order, so long as the trial court took into consideration that wife would likewise be drawing Social Security benefits in her own name pursuant to 42 U.S.C. § 402(b)(1) and how her pension might affect the award of spousal maintenance. To award wife the equivalent of one-half of husband's Social Security pension *in addition to* her own old age benefits might be inequitable and put her in a better financial position than husband. The trial court is instructed to reconsider this issue when it recalculates wife's spousal maintenance on remand.

### C. Life Insurance

■ ¶ 17 Husband asserts that the trial court exceeded its authority under Title 25 in ordering him to maintain a life insurance policy for the benefit of wife at a cost to him of $768 annually. Husband argues, citing A.R.S. § 25–327(B) (2005), that awards of spousal maintenance terminate upon the death of either party and that to order insurance to secure future spousal maintenance is an abuse of discretion.

¶ 18 Husband further asserts that the issue of insurance was not properly before the trial court. Life insurance was not listed as a contested issue in the joint pretrial statement and was not mentioned in either party's written closing arguments. Wife included the life insurance provision in her post-trial proposed decree and argues that husband was on notice because the life insurance issue was in her temporary order papers in 2004 and her settlement conference memorandum in April 2005. Wife further states that, at trial, "testimony was elicited from [husband]" regarding the life insurance policy. We are not persuaded by wife's argument.

■ ¶ 19 Neither listing the life insurance as an issue in earlier papers nor having husband admit during testimony that he had life insurance and that wife was the beneficiary satisfies wife's procedural duties. Arizona Rule of Civil Procedure 16(d) provides that the joint pretrial statement must include the contested issues of fact and law. "The pretrial statement controls the subsequent course of the litigation." *Carlton v. Emhardt,* 138 Ariz. 353, 355, 674 P.2d 907, 909 (App.1983). In December 2004, the trial court ordered a joint pretrial statement listing "any" remaining contested issues. Life insurance was not listed in the joint pretrial statement. Just prior to the start of trial, the trial court again enumerated the remaining contested issues; life insurance was not one of those issues. When the trial court asked "[I]s that correct?" neither party spoke up to add life insurance as an issue. For the above stated reasons, the provision of life insurance to secure spousal maintenance was not properly before the trial court and should not have been awarded.[2] The trial court is reversed on this issue.

### D. Community Assets and Debts

■ ¶ 20 Husband asserts that the trial court abused its discretion in ordering him to be solely responsible for the $34,000 line of community credit obligation and in failing to require wife to account for or divide $24,000 she removed from the community property money market account. We view the evidence in the light most favorable to sustain-

---

**2.** In addition to our concern that the provision arguably extended the spousal maintenance beyond the payor's death, we are not confident that the fact that the value of the premium must have added to the already overly generous spousal maintenance award was considered by the trial court.

ing the trial court's findings and determine whether there was evidence that reasonably supports those findings. *Mitchell v. Mitchell*, 152 Ariz. 317, 323, 732 P.2d 208, 214 (1987). The trial court spent considerable time determining the property settlement of husband and wife. It took into account their community property and debts, as well as how the funds withdrawn by each spouse were used. The record supports the distribution, and the trial court is affirmed on this issue.

### E. Attorneys' Fees Below

¶ 21 Husband asserts that the trial court abused its discretion in ordering him to pay wife's attorneys' fees and costs in the amount of $18,789.44. The trial court stated that it found husband took unreasonable positions with regard to the issues of spousal maintenance and the community debt. As we have reversed and remanded on the issue of spousal maintenance above, the trial court should reconsider to what degree, if any, husband should be responsible for wife's fees and costs.

### F. Attorneys' Fees on Appeal

¶ 22 Both husband and wife request attorneys' fees and costs on appeal pursuant to A.R.S. § 25–324 (2005), and Rule 21 of the Arizona Rules of Civil Appellate Procedure. Section 25–324 requires us to examine both the financial resources and the reasonableness of the positions of each party. After doing so, we find that the parties should bear their own fees and costs on appeal.

### CONCLUSION

¶ 23 For the foregoing reasons, we reverse the judgment of the trial court on the issues of spousal maintenance, Social Security, life insurance and the award of attorneys' fees below.

As to the distribution of community debt, the trial court is affirmed.

CONCURRING: MAURICE PORTLEY and LAWRENCE F. WINTHROP, Judges.

