NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

LISA MARIE KNOEBEL, *Petitioner/Appellee*,

*v.*

ERIK ANDREW KNOEBEL, *Respondent/Appellant*.

No. 1 CA-CV 22-0405 FC
FILED 3-14-2023

Appeal from the Superior Court in Maricopa County
No. FC2021-070099
The Honorable Joseph S. Kiefer, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Schmillen Law Firm, PLLC, Scottsdale
By James R. Schmillen
*Counsel for Petitioner/Appellee*

Cordell Law, LLP, Scottsdale
By Kristina L. Cervone
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Michael J. Brown and Judge Michael S. Catlett joined.

---

**M c M U R D I E**, Judge:

¶1        Erik Knoebel ("Father") appeals from the superior court's dissolution decree, denial of his motion to alter or amend the judgment, and grant of attorney's fees to Lisa Knoebel ("Mother"). We affirm the decree in part but vacate the spousal maintenance, child support, and attorney's fees awards and remand for proceedings consistent with this decision.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Mother were married in 1995 and have two minor children. Mother petitioned for dissolution in January 2021. The parties litigated issues involving child support, spousal maintenance, and division of assets and debts.

¶3        Father and Mother jointly owned a business selling jet skis. Originally, Father operated the business while Mother homeschooled their children. Mother began working full-time as a teacher in 2021. Mother also has a photography business. Mother testified her gross monthly income is about $4,200, and her expenses are around $5,600. Mother has a B.S. in Education but testified she could increase her earnings by obtaining a master's degree.

¶4        Father's highest level of completed education is high school. In his affidavit of financial information, Father reported that before they opened the business, he made around $4,000 per month as a production manager. At the evidentiary hearing, he relayed that the community business faced supply chain and product issues and would face "an extreme struggle for the next six to twelve months." Father stated that if they sold the business, he would not return to the jet ski sales industry because of these difficulties.

¶5        The parties disputed Father's monthly income during the marriage. Father asserted he earned around $5,000 per month. He did not provide supporting documentation but said this was the "actual salary that [he] get[s] from the business from paychecks." He claimed his monthly

personal expenses are about $4,000. On the other hand, Mother offered an expert who testified that Father's gross monthly income from the business was around $12,500. Mother's expert calculated Father's community earnings by averaging the sum of Father's estimated market salary[1] and the business's pre-tax revenue between December 2016 and March 2021.[2]

¶6            The parties disagreed on the business's overall value. Mother's expert valued the jet ski business at a fair market value of around $410,000. Father hired an expert to review and comment on the valuation report. Father's expert believed the business was worth between $169,000 and $294,000. Mother proposed a settlement to "split the differences in values on the business" and value the business at $325,750. In the joint pretrial statement, Mother requested that the court award Father the business with appropriate equalization to her. Father asked the court to order the business sold and the proceeds equitably divided. If the court ordered the business sold, Mother requested that until the sale closed, she receive half of "the business generated net income in excess of a market salary."

¶7            The parties also disputed whether they were responsible for a loan from Father's parents. Father testified that his parents loaned them money to start the jet ski business. Father explained they "took over [his parent's] mortgage" to repay his parents, and the community owes them around $280,000. He also said they repay the loan "through the business every month." Father offered evidence of his parents' mortgage statements and the business's bank statements showing he paid his mother about $1,600 in October, November, and December 2020. Father asked the court

---

[1]      Mother's expert estimated Father's market salary based on the Economic Research Institute Database reports of median compensation for a sales manager, a branch store manager, and a motorcycle sales representative.

[2]      The superior court found that "both business valuation experts placed Father's draw from the parties' jet ski business at about $12,500 per month." We cannot find record evidence that Father's expert agreed his monthly income was $12,500. Although Father's expert stated the "adjustments to include a fair market salary for Mr. Knoebel" appeared reasonable, she disagreed with Mother's expert's income adjustments and revenue projections, which were considered when determining Father's monthly income.

to hold the community "equally responsible for the community debt" and pay the remaining loan balance from the business sale's proceeds.

¶8            Mother argued there was insufficient evidence supporting a loan obligation. Mother acknowledged that "Father and his parents exchange[d] money regularly throughout the marriage," and Father accepted money from his parents to start the business and buy out a business partner. But she claimed that the community was not responsible for repayment and no documents supported Father's loan claim. In essence, Mother claimed that the money was a gift to the community, and Father's parents could "pursue the parties accordingly" if they expected repayment.

¶9            In January 2022, the superior court entered the dissolution decree. The court awarded Mother the family home and ordered her to pay Father his share of the home's equity by April 2022. To calculate child support and spousal maintenance, the court found that Father earned about $12,500 monthly, and Mother earned roughly $4,200 monthly. The court ordered Father to pay $690 per month in child support, $1,500 monthly in spousal maintenance for 24 months, and $1,000 monthly in spousal maintenance for 12 months.

¶10           The court declined to find a community loan from Father's parents because "no documentation of this purported loan was offered at trial." The court also found that "the best way to establish the value [of the business] is to list the business for sale." Thus, the court ordered the parties to place the business for sale within 90 days. Finding that the equity in the business is a community asset, the court ordered the parties to share any sale proceeds equally. Finally, the court declined "to rule on specific disputes regarding assets, income, or debts of the business" to see if they would be "resolved through the sales process."

¶11           The court awarded Mother a portion of her requested attorney's fees under A.R.S. § 25-324(A) after finding there was a "substantial disparity of financial resources between the parties" and that Father "acted unreasonably in the litigation."

¶12           Father moved to alter or amend the judgment under Arizona Rule of Family Law Procedure ("ARFLP") 83(a), arguing the court erred when calculating Father's income, declining to divide the loan between the parties, and granting Mother's request for attorney's fees. Father also challenged the court's findings in its award for spousal maintenance. The court denied the motion.

**¶13**      Father appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1), (2) and ARFLP 78.

## DISCUSSION

**¶14**      We review the denial of a Rule 83 motion for an abuse of discretion. *Wisniewski v. Dolecka*, 251 Ariz. 240, 241, ¶ 5 (App. 2021). A court abuses its discretion by making an error of law or reaching a decision unsupported by the record. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). We defer to the superior court's credibility determinations. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

### A.      The Superior Court Did Not Abuse Its Discretion by Declining to Find a Community Loan from Father's Parents.

**¶15**      We briefly discuss Father's contention that the court erred by failing to allocate the debt Father claims the community owed to his parents. We review a court's division of debt for an abuse of discretion. *Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App. 2019). We will affirm the superior court's ruling if reasonable evidence supports it. *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).

**¶16**      Father argues that his testimony, record of his parents' mortgage, and payments to his parents sufficiently showed the community owed a debt to his parents. He asserts, "it can be inferred that these payments are being made to his parents based on the loans." But the court did not have to accept Father's inferences. *See Hurd*, 223 Ariz. at 52, ¶ 16. Because of the lack of loan documentation, the superior court could reasonably find insufficient evidence showing a community debt. *See Kohler*, 211 Ariz. at 107, ¶ 2.

### B.      The Superior Court Abused Its Discretion When Determining the Spousal Maintenance Award.

**¶17**      Father contends that the superior court improperly determined Father's spousal maintenance obligation. We review a spousal maintenance award for an abuse of discretion. *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9 (App. 2007).

**¶18**      In reviewing a spousal maintenance award, we first consider whether the spouse seeking maintenance is eligible under A.R.S. § 25-319(A). *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 15 (App. 1998). "Second, we must review the amount and duration of the award to determine whether the trial court properly considered the factors listed in

A.R.S. § 25-319(B)." *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984). The statute requires the superior court to balance factors such as the ability of the payor spouse to meet his or her needs while paying spousal maintenance, the "comparative financial resources" of the parties, and the "financial resources of the party seeking maintenance, including marital property apportioned to that spouse." A.R.S. § 25-319(B)(4), (5), (9). If inappropriate bases are used to determine spousal maintenance, we reverse the award for redetermination. *See Cullum v. Cullum*, 215 Ariz. 352, 355, ¶ 15 (App. 2007).

¶19 The superior court found that the parties did not have significant assets besides their home and business. The court also found Mother's expenses exceeded her income, and during the marriage, Mother agreed to stay home so Father could work. Substantial evidence supported these findings. *See* A.R.S. § 25-319(A)(1), (2), (4). But we cannot affirm the court-ordered amount and duration of spousal maintenance because the court miscalculated Father's income. *See Cullum*, 215 Ariz. at 355, ¶ 15.

¶20 Father argues the court improperly attributed business profits to Father's income after the business's sale. We agree. When calculating the spousal maintenance and child support awards, the court adopted the expert's determination of Father's monthly earnings, which incorporated business income. The court ordered the business sold but still included the business's pre-tax revenue in Father's earnings by adopting the $12,500 figure as Father's monthly income.

¶21 Given the evidence presented, the court acted within its discretion to find that Father's pre-divorce income was the sum of his market salary and the business's pre-tax profit. But because Father works for a business that the court ordered to be sold, the court must determine Father's income and earning capacity separate from the jet ski business. Mother argues it would be improper to speculate about Father's future income. *See Gutierrez*, 193 Ariz. at 349, ¶ 23 (quoting *Thomas*, 142 Ariz. at 391 ("A maintenance award 'cannot be based upon . . . speculative expectations.'")). But here, we are not speculating whether Father will keep earning income as a jet ski business owner. The court ordered the community to place the business for sale within 90 days. Because of the court's order to sell the business, Father will no longer benefit from being the business owner. Instead, he must find a new job or work at the business as a manager who no longer receives business proceeds. The superior court abused its discretion by basing the amount and duration of spousal maintenance on Father's continued role as owner of a sold business.

¶22      Likewise, until the business sold, it remained a community asset, and Mother was entitled to 50% of the business-generated net income over Father's market salary. Mother requested this approach until the business sold. The court refused. It is not apparent from the record that the spousal maintenance order covered Mother's entitlement to her half of the business proceeds before the mandated sale.

¶23      Contrary to Mother's position in defending the decree, it is speculative to presume Father will keep earning $12,500 monthly after the sale of the jet ski business. The superior court acknowledged that "upon sale of the family business, Father may not be able to immediately earn at the same level he has over the past few years." When determining Father's income, Mother's expert calculated Father's draw as an owner and a manager of the business. But the $12,500 figure does not represent Father's monthly income as a non-owner manager. Nor is there any evidence supporting a finding that Father could earn $12,500 per month in a similar role. The record shows Father's highest level of education is a high school diploma, and he made $4,000 per month as a production manager before he opened the business. And Mother's expert capped Father's market salary for his duties at the business at a high of $93,099 (or about $7,758 per month) for the period ending March 31, 2021.

¶24      There is no evidence supporting a determination that Father could earn $12,500 per month after the business is sold. The community business generated revenue after years of operation and substantial cash contribution. The record lacks evidence that Father could have income at the level attributed by Mother's expert based on the community business after the sale.

¶25      Because the court ordered spousal maintenance based on income that Father would no longer earn, it left open the possibility that Father would need to exhaust his share of the marital property to pay for Mother's spousal maintenance, leaving him without adequate resources to support himself. When considering the parties' financial resources, this court has established that requiring the spouse seeking maintenance to rely solely on the principal of his or her community share for support would be inequitable. *See Thomas*, 142 Ariz. at 391; *Gutierrez*, 193 at 348, ¶¶ 18–19. Although the court may consider the community property when determining whether the receiving spouse can sufficiently meet his or her needs, *Gutierrez*, 193 Ariz. at 348, ¶ 18, the spouse "should not be expected to . . . exhaust[] whatever financial reserves [he or] she possesses to the extent that when [he or] she no longer had any earning capacity there

would be nothing left upon which [he or] she could draw," *Thomas*, 142 Ariz. at 391 (citing *Wineinger v. Wineinger*, 137 Ariz. 194, 198 (App. 1983)).

**¶26** It is just as unfair to require the payor spouse to exhaust his or her share of the community property to fulfill spousal maintenance obligations. Although the court may consider Father's share of community property when determining whether he can meet his needs while paying spousal maintenance, it cannot require Father to exhaust his share to support Mother. *See Gutierrez*, 193 Ariz. at 348, ¶ 18; *Thomas*, 142 Ariz. at 391. To ensure Father would not need to exhaust his share of the business and home equity to pay Mother, the court must consider Father's monthly earnings separate from his role as the owner of the jet ski business because the court ordered that business sold.

**¶27** The superior court could not use the $12,500 figure without evidence suggesting that Father could continue to earn this amount after the business sold. *See DeLuna*, 247 Ariz. at 423, ¶ 9 (We cannot affirm a finding without supporting evidence.). Thus, the court abused its discretion by attributing income to Father without record evidence supporting his capacity to earn it. *Id.*

**¶28** We vacate the superior court's spousal maintenance award and remand for the court to reconsider Father's income, his ability to meet his own needs while paying spousal maintenance, the financial resources of the parties, and other factors the court deems appropriate. *See* A.R.S. § 25-319(B).

**C.** **The Superior Court Abused Its Discretion by Calculating Father's Income for the Child Support Award.**

**¶29** We review a child support award for an abuse of discretion. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009). "An abuse of discretion exists when the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support the decision.'" *Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 7 (App. 2015) (quoting *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999)).

**¶30** Our supreme court adopted guidelines to establish child support obligations consistent with children's needs and parents' abilities to pay. A.R.S. § 25-320 app. ("Guidelines") § I; *Milinovich*, 236 Ariz. at 615, ¶ 8. The guidelines first direct the court to determine the gross income of each parent. Guidelines § 1.A. (Step 1). Child support income means "income from any source." Guidelines § II.A.1.b. Although the guidelines do not "specify or limit the items that the court may consider in determining

a parent's 'financial resources,'" gross income is determined by the money or cash-like benefits available for spending. *Milinovich*, 236 Ariz. at 616, ¶ 11 (quoting *Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994)).

**¶31** Here, the superior court reported Father's income as $12,500 on the child support worksheet. As explained above, the record does not support the superior court's income determination. Thus, we vacate and remand for the court to recalculate the child support award after considering Father's income and the spousal maintenance award.

**D. We Vacate the Superior Court's Award of Attorney's Fees and Remand for the Court to Reconsider the Parties' Financial Resources and the Reasonableness of the Positions Taken.**

**¶32** Father argues that the superior court erred by granting Mother's attorney's fees request. We review the attorney's fees award for an abuse of discretion. *Magee v. Magee*, 206 Ariz. 589, 590, ¶ 6 (App. 2004). Under A.R.S. § 25-324, the court may order fees and costs "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A).

**¶33** The superior court found "that there is substantial disparity of financial resources between the parties" and that Father acted unreasonably "with respect to management of the business, lack of adequate documentation, and his relatively late change of position with respect to disposition of the business."

**¶34** Father argues the superior court erred by finding a disparity of financial resources between the parties. Because no record evidence supports the court's determination of Father's income after the business's sale, we vacate the superior court's attorney's fees award and remand for reconsideration of "the financial resources of both parties." *See* A.R.S. § 25-324(A).

**¶35** Father also disputes the court's determination that he acted unreasonably in the litigation. The court must reconsider the fee award, so we offer guidance on the stated basis for the court's finding of unreasonableness.

**¶36** Under A.R.S. § 25-324(A), a court may consider the "reasonableness of the positions each party has taken throughout the proceedings." The conduct must relate to a legal position to be unreasonable within the statute's meaning. *See, e.g.*, *Keefer v. Keefer*, 225

Ariz. 437, 441–42, ¶¶ 16–17 (App. 2010); *see also In re Marriage of Williams*, 219 Ariz. 546, 548–49, ¶¶ 10, 12 (App. 2008). At oral argument here, Mother conceded that Father's "management of the business" did not relate to his legal position. Likewise, Mother acknowledged that there is no evidence that Father changed his position about the business sale. So the finding of unreasonableness on these grounds was error.

**¶37** It is not self-evident what the court was referring to when it found a "lack of adequate documentation." If it was documentation for a claim raised in court or failure to provide requested documents, it could be a basis for an unreasonableness finding. If, on the other hand, it related to business or personal records generally, that would not be a basis for an unreasonableness determination as it does not relate to Father's legal position. Because we cannot discern the basis for the finding, we cannot opine if it was error to make it.

## ATTORNEY'S FEES

**¶38** Father and Mother request appellate attorney's fees under A.R.S. § 25-324. Per our discretion, we decline to award attorney's fees. Father is entitled to his costs on appeal upon compliance with ARCAP 21.

## CONCLUSION

**¶39** We affirm the superior court's denial of Father's request to divide the purported loan from his parents. But we vacate the portions of the decree on spousal maintenance, child support, and attorney's fees. As a result, we remand for the superior court to reconsider these issues consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA