NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MARK E. FRANDSEN, *Petitioner/Appellee*,

*v.*

VERONICA FRANDSEN, *Respondent/Appellant*.

No. 1 CA-CV 25-0577 FC

FILED 04-13-2026

Appeal from the Superior Court in Yuma County
No. S1400DO202400790
The Honorable Nathaniel T. Sorenson, Judge

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

COUNSEL

Veronica Perea Frandsen, Somerton
*Respondent/Appellant*

The Law Offices of Amanda Taylor, PLLC, Yuma
By Amanda Taylor
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Andrew J. Becke and Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

¶1         Veronica Perea Frandsen (Mother) appeals from a decree of dissolution ending her marriage to Mark Evan Frandsen (Father). Mother argues the decree erred in awarding Father the marital house and a business, failed to hold Father accountable for allowing a Jeep to be repossessed, and erred in awarding spousal maintenance. Mother has shown no error in the award of the house. However, the decree was deficient in awarding Father the business and did not discuss the Jeep repossession. Accordingly, the portion of the decree awarding Father the business is vacated and the matter is remanded for further consideration of the business as well as the Jeep repossession. Recognizing remand on those issues also could alter the spousal maintenance award, it also is vacated and remanded. The decree is otherwise affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2         Mother and Father married in August 2010 and have one minor son. In August 2024, Father filed and served Mother with a dissolution petition. The petition alleged the couple did not acquire any community property during the marriage. The petition listed the marital house as separate property, which Father claimed he brought to the marriage. The petition alleged that Mother should be responsible for $35,000 in debt incurred during the marriage for a Jeep. Father sought sole legal decision-making, alleging Mother had committed domestic violence against Father during the marriage.

¶3         Mother's September 2024 response countered that community property had been acquired during the marriage and should be divided equitably. Mother asserted that the community incurred significant debt and that Father wasted and concealed community assets. Mother requested sole legal decision-making, denying she committed domestic violence and asserting that Father had committed domestic violence against her.

¶4          Father filed an amended petition, alleging an April 2024 domestic violence incident where Mother hit him. Father also alleged he had obtained an order of protection against Mother. Father asserted no spousal maintenance was appropriate and that Mother wasted, and may have concealed, community assets. Mother's response to the amended petition largely tracked her response to the original petition.

¶5          In November 2024, the court set a May 1, 2025 trial. After evidentiary hearings in December 2024, the court issued temporary orders awarding equal parenting time but awarding Father sole legal decision-making, ordering Father to maintain all community assets and pay all community debts, and to pay $312 in monthly child support.

¶6          In April 2025, Mother moved for contempt, alleging Father failed to comply with the court's orders and that his failure to pay community debts caused the Jeep to be repossessed. At the May 2025 trial, the court heard testimony and argument from Father and Mother, received exhibits, and took the matter under advisement. Later in May 2025, the court entered the decree. Along with dissolving the marriage, the decree awarded Father sole legal decision-making authority, awarded equal parenting time and awarded Father the house as his sole and separate property. The decree also awarded Father a business called "Just Ride," apparently a recreational vehicle business, which Father started before the marriage. The decree did not mention the Jeep. The decree required Father to pay Mother an equalization payment of $7,776.83, spousal maintenance of $350 for 24 months and $83 in monthly child support.

¶7          This court has jurisdiction over Mother's timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) and -2101(A)(1) (2026).[1]

## DISCUSSION

¶8          Trial evidence is considered in the light most favorable to upholding the decree, and all factual findings will be sustained unless clearly erroneous. *Sherman v. Sherman*, 241 Ariz. 110, 113 ¶ 9 (App. 2016); *Kohler v. Kohler*, 211 Ariz. 106, 107 ¶ 2 (App. 2005); *see also In re Marriage of Gibbs*, 227 Ariz. 403, 410 ¶ 18 (App. 2011) ("The presence of contrary facts does not render a [superior] court's factual determinations clearly

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

erroneous."). Mother's opening brief fails to comply with ARCAP 13, including failing to cite authority, facts in the record and where in the record arguments on appeal were raised in superior court. *See* ARCAP 13(a)(5) & (7)(A). Such deficiencies typically constitute waiver. *See, e.g.,* *Ramos v. Nichols*, 252 Ariz. 519, 523 ¶¶ 10-11 (App. 2022). However, given the issues involved (including the best interests of a child), this court addresses the merits of Mother's arguments raised in her opening brief.[2]

## I. The Decree Properly Awarded Father the House but Not the Business.

**¶9** Mother challenges the decree awarding Father the house and the business. This court reviews de novo whether property should be classified as community or separate. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523 ¶ 4 (App. 2007) (citing cases). This court views the evidence in a light most favorable to upholding the superior court's ruling and will affirm if reasonable evidence supports it. *Kohler*, 211 Ariz. at 107 ¶ 2 (citing cases).

**¶10** Starting with the house, Mother states the couple jointly occupied the house during the marriage and that it was placed into the Executive Edge Trust in April 2023, "with both spouses as co-trustees." She argues the court improperly awarded Father the house "based on hearsay about a parental deed, without title or trust accounting," adding "[n]o competent evidence supported" the "title findings," which she claims is error. Recognizing hearsay is admissible and can be relied upon in findings of fact, *see* Ariz. R. Fam. L.P. 2(b), and that being named a trustee does not mean the trustee owns trust assets, *see* A.R.S. § 14-10810, the trial record supports the award of the house to Father.

**¶11** Trial evidence shows that, in February 2006, a recorded warranty deed from Father's parents "as Trustees of the Frandsen Family Trust dated January 9, 1992" conveyed the house to Father as "a married man, as his sole and separate property."[3] Father then held the house as his

---

[2] Mother's reply brief attempts to raise, for the first time on appeal, additional issues, including compliance with parenting education requirements, fraud and misconduct, findings awarding Father sole legal decision-making, and domestic violence and substance abuse allegations. By failing to raise these issues until her reply, Mother has waived those issues. *See State v. Guytan*, 192 Ariz. 514, 520 ¶ 15 (App. 1998) (citing cases).

[3] At that time, Father was married to someone other than Mother. The record includes a February 2006 disclaimer by that person of any ownership interest in the house.

sole and separate property under that warranty deed until 2023, when it was transferred to the Executive Edge Trust discussed below. Accordingly, before the marriage and for almost all of the marriage between Father and Mother, Father held the house in his own name as his sole and separate property.

¶12            Father testified that his parents lived in the house and he bought it from them, apparently in 2006. He financed it before the marriage, both with assistance from his parents and "later on, I got a loan from the bank and paid them out." He paid off the loan with money he inherited from his parents. On this record, the superior court properly could conclude that the house was Father's sole and separate property.

¶13            As Mother notes, in April 2023, Father conveyed title to the house to Executive Edge Trust, a revokable trust. The warranty deed doing so states that Father, "a married man," "hereby conveys and warrants all his interest to" trustees of the trust. Father testified that he "put into the trust the house that was deeded solely in [his] name." The Trust has an express provision stating that any property transferred to the Trust as separate properly will be held by the Trust as separate property. Father also testified to his understanding that, when the trust was revoked, the property would be returned to the person who gave it to be put in the trust.

¶14            The decree found that the house was held by Father as his sole and separate property, that it was paid off by funds Father inherited (not community income or property) and awarded the house to Father as his sole and separate property. Mother argues that was error, claiming the transfer to the trust "proved joint ownership of the home." But the property was transferred to the trust as sole and separate property and Mother offered no evidence that Father converted the house to community property or used community funds to pay for the house. *See Saba v. Khoury*, 253 Ariz. 587, 592 ¶ 15 (2022) (citing cases) ("When a marital community contributes its money or labor to a spouse's separate property, it 'is entitled to share in the enhanced value of [that] property.'"). Indeed, at the end of trial (and although doing so to seek additional trial time), Mother admitted she "never addressed how much [she] contributed to the home."

¶15            To convert sole and separate real property into community property, a written conveyance must "indicat[e] an intention that the grantee/spouse should have the property." *Bender v. Bender*, 123 Ariz. 90, 93 (App. 1979) (citation omitted). Here, the April 2023 warranty deed transferring the house to the Trust reflects no such intention. That evidence, coupled with Father's testimony and Mother's admission that she provided

no contrary evidence, shows that the decree did not err in awarding Father the house as his sole and separate property.

¶16            Turning to the business, the decree summarily states, "The Court finds [Father] should be awarded the business along with all its assets and debts." Although the parties appear to view this as awarding the business to Father as his sole and separate property, unlike the house, nowhere does the decree state that the business was awarded to Father because it was his sole and separate property.

¶17            From the record, the business may have been awarded to Father as his sole and separate property. On the other hand, it also may have been a community asset that the court then awarded to Father, particularly given the conflicting evidence about how the business was handled during the marriage, Mother's involvement in the business and whether the business had value at the time of the trial. The basis for such an award, including the findings leading up to such an award, must be adequate for this court to determine the basis for the award. *See, e.g.*, *Meister v. Meister*, 252 Ariz. 391, 394 ¶ 1 (App. 2021) (finding remand appropriate when the court could not discern whether the division of assets was fair and equitable). Here, the decree does not provide that information, including whether the business was awarded to Father because it was his sole and separate property or, instead, whether it was community property and awarded to Father, and the basis for such an award. Accordingly, that portion of the decree awarding Father the business is vacated and remanded for further proceedings.[4]

## II.      The Decree Failed to Address the Repossession of the Jeep.

¶18            The December 2024 temporary orders required Father to maintain all community assets and make payments on community debts. That included debt owed on a Jeep, apparently owned by the community but used daily by Mother. Mother argues that Father failed to make payments on the Jeep loan, resulting in it being repossessed. The decree does not mention the issue, and Mother reasons that the court improperly "accepted counsel's false claim that payments were current" at the May 2025 trial.

---

[4] As a result, this court need not (and expressly does not) address Mother's arguments regarding valuing the business, her interest in the business and whether she has any equitable claim to a portion of the business, leaving those issues for resolution (if necessary) on remand.

¶19        The record includes an October 18, 2024 repossession notice, addressed to Father, for the 2023 Jeep. The records indicate the Jeep was purchased during the marriage, presumptively making it community property. *See* A.R.S. § 25-211(A). There was no indication that presumption was rebutted at trial.

¶20        Conceding the decree does not address the Jeep, Father argues that silence is an "implicit determination that [Father] acted in good faith, that [Mother] had an opportunity to preserve the asset but failed to do so, and that the decree's omission of the Jeep was within the court's discretion under A.R.S. § 25-318(A)." But, recognizing the division of community assets and debts are the dispositive issues in this appeal, this court will not guess what determination might be implicit in the decree on this disputed issue. Because the record does not show how the Jeep issue was resolved, the superior court should address it on remand.

## III.    Mother Has Not Shown Improper Bias by the Superior Court.

¶21        Mother argues there was "clear imbalance" from the superior court relating to an affidavit because opposing counsel's "unsworn statements were adopted verbatim in the Decree" and her "verified exhibits . . . were disregarded." Mother contends these actions were "contrary to Canon 2.2 and equal-treatment requirements." A judge is presumed to be "free of bias and prejudice." *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63 ¶ 29 (App. 2010) (citation omitted). A party challenging the impartiality of a judge must present a specific basis for an assertion of bias and prove bias by a preponderance of the evidence. *Id.* The bias must arise from an extrajudicial source and not from the judge's participation in the case; a judge's rulings do not themselves demonstrate bias. *Id.* Mother has offered no evidence to rebut the principle that a "judge is presumed to be free of bias and prejudice." *Cook v. Losnegard*, 228 Ariz. 202, 206 ¶ 22 (App. 2011). For these reasons, Mother's judicial bias claim fails.

## IV.    Other Issues and Attorneys' Fees and Costs.

¶22        Mother challenges the spousal maintenance award. On remand, resolving the asset allocation issues addressed above may impact the spousal maintenance award. *See* A.R.S. § 25-319. For that reason, the spousal maintenance award is vacated for further consideration on remand. Given the generality of her other arguments, Mother has shown no reversible error regarding disclosure, discovery and findings and conclusions, not otherwise accounted for in the partial reversal and remand.

**¶23** Mother requests attorneys' fees and costs on appeal under A.R.S. § 25-324. Father requests attorneys' fees and costs under ARCAP 21 and A.R.S. § 25-324. To the extent the parties rely on A.R.S. § 25-324(B), those requests are denied. In the exercise of this court's discretion, the requests for fees under A.R.S. § 25-324(A) are denied. Mother is, however, awarded her taxable costs incurred on appeal contingent on her compliance with ARCAP 21.

## CONCLUSION

**¶24** That portion of the decree allocating the business is vacated and the matter is remanded for further consideration of the business as well as the Jeep issue. Because remand on those issues also could alter the spousal maintenance award, that award also is vacated and remanded. In all other respects, the decree is affirmed.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR